IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TRACY DANIELS,** | }<br>} |
| **Plaintiff,** | }<br>} |
| v. | } Case No.: 7:19-CV-01003-RDP<br>} |
| **ANDREW SAUL, COMMISSIONER**<br>**SOCIAL SECURITY,** | }<br>}<br>} |
| **Defendant.** | } |

### MEMORANDUM OF DECISION

Plaintiff Tracy Daniels brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On March 30, 2018, Plaintiff filed her application for DIB for alleged disabilities beginning May 15, 2017. (R. 80, 147-50). Plaintiff's alleged period of disability was from May 15, 2017 through December 31, 2018. (R. 38). She was last insured for purposes of DIB on December 31, 2018. (*Id.*). The Social Security Administration initially denied Plaintiff's application on August 20, 2018. (R. 85-89). Plaintiff then requested a hearing before an administrative law judge ("ALJ") on September 25, 2018. (R. 90). The hearing was held before ALJ Perry Martin on January 8, 2019, in Birmingham, Alabama. (R. 35-62). A Vocational Expert ("VE") was present and testified during the hearing. (*Id.*). In the ALJ's decision, entered on February 5, 2019, he concluded that

Plaintiff was not disabled under sections 216(i) and 223(d) of the Act from May 15, 2017 through December 31, 2018. (R. 15). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 6, 2019, that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review. (R. 1-3).

**II.    Facts**

Plaintiff was 39 years old at the time of the hearing. (R. 39). She has five years of college education and previously worked as a certified nursing assistant. (R. 41, 57, 189, 199-203). Plaintiff lives with her two children, a seventeen and thirteen year old. (R. 40). Plaintiff currently receives veteran's benefits from the VA and is rated as "100 percent disabled."

On her function report, Plaintiff noted that she is able to take her children to school, cook, clean, shop, and care for her pets when she is feeling well. (R. 207-14). But, Plaintiff reported that her level of pain interferes with her ability to complete these activities, as well as sleep. (*Id.*). She self-assessed that her conditions negatively affect how well she can perform most physical activities, but that they do not affect her talking, hearing, seeing, memory, or understanding. (*Id.*). Plaintiff alleges limitations due to asthma, hypertension, allergies, back injury, anxiety, depression, insomnia, conditions affecting her legs, sciatica, and gastroesophageal reflux disease ("GERD"). (R. 188). In a subsequent report, she also alleges that she has joint and neck pain, thoracic outlet syndrome, pneumonia, Raynaud's disease, and carpal tunnel. (R. 218).

There are medical records from multiple treating and examining physicians throughout Plaintiff's alleged period of disability. (R. 290-2135). She visited an orthopedic physician multiple times beginning in September 2016 and ending in May 2017. (R. 302-26). An MRI of the left knee showed that she had mild degenerative changes. (R. 324). During her last appointment on May 23,

2017, the physician noted that Plaintiff had an active range of motion in both legs and that her strength had improved. (R. 324-26).

Plaintiff alleges that she suffers from neck and back pain. (R. 188, 218). She underwent an MRI in December 2016 on her cervical spine that showed disc desiccation (dehydration) and a tiny disc bulge with no stenosis at C5-6. (R. 366-67). She also had mild posterior disc protrusion and disc desiccation at C6-7 with no stenosis or cord encroachment. (*Id.*). In March, 2017, she saw a neurologist who diagnosed her with chronic migraine headaches and cervical muscle spasms. (R. 1603). He ordered an MRI that showed the cerebellar tonsils project 0.5 cm below the foramen magnum, consistent with asymptomatic Chiari I. (R. 358, 682). In May 2017, Plaintiff continued physical therapy to treat cervical muscle spasms. (R. 1551). Her physical therapist reported that she performed exercises well and that she self-rated her pain as a 4/10. (*Id.*). In November 2017, Plaintiff reported that she had continued to participate in physical therapy and her pain was decreasing as her range of motion improved. (R. 1482).

In April 2018, Plaintiff returned to the neurologist for a follow-up visit and complained of neck pain and stiffness radiating into the trapezius muscles. (R. 1856). She also complained of numbness of the right hand and arm. (*Id.*). The physician reported that she had mild osteoarthritic changes and appeared to be awake, alert, and oriented fully, and had normal speech and language. (R. 1858). He also noted that her recent and remote memory, concentration, attention, and fund of knowledge were normal. (*Id.*). Her reflexes were rated 2/4 and Plaintiff had mild atrophy in the right first dorsal interosseous. (*Id.*). In August 28, 2018, Plaintiff reported pain in her neck and shoulders. (R. 1853). She was diagnosed with chronic migraine headaches, cervical muscle spasm, spondylosis/shoulder pain and neurovascular symptoms, bilateral shoulder disease, asymptomatic Chiari malformation, sphenoid sinusitis, and right carpal tunnel syndrome. (R. 1855). The

3

physician noted that Plaintiff's sphenoid sinusitis was "likely better." (*Id.*). The physician ordered an MRI of both shoulders which showed some mild degenerative changes. (R. 1856). The MRI also showed that there were no significant degenerative changes to her cervical spine, spinal canal, or neural foramen stenosis. (R. 2083). On October 9, 2018, a cervical x-ray was performed that showed a loss of lordosis. (R. 1845).

In May 2018, Plaintiff had a physical therapy assessment to treat the shoulder girdle and upper extremities. (R. 1866-70). The therapist reported that Plaintiff's sensation was intact, her muscle tone was normal, her coordination was good, she ambulated without assistance independently, her balance was intact, the strength of her upper and lower extremities was within normal limits, and the range of motion of her upper and lower extremities was within normal limits. (*Id.*).[1] In November 2018, Plaintiff had an MRI performed on her left shoulder that showed hypertrophic degenerative changes at the acromioclavicular joint, slight compression of the supraspinatus at the muscular tender, and abnormal signal in the substance of the supraspinatus tendon that was consistent with tendinopathy. (R. 2088). The MRI also showed that there was fluid present in the subacromial bursa, which is consistent with subacromial bursitis. (*Id.*). The medical record notes that no tears or perforations were present. (*Id.*). The MRI of Plaintiff's right shoulder showed Type III acromion causing mild mass effect on the anterior supraspinatus tendon with resultant mild tendinosis. (R. 2086). Additionally, the MRI showed mild fluid within the subacromial bursa that suggested subacromial bursitis. (*Id.*).

On November 29, 2017, Plaintiff had a Compensation and Pension ("C&P") exam performed. The physician found her mid-to-lower back and bilateral sacroiliac joints were tender upon palpation. (R. 1441). The physician determined that functional limitations could be expected

---

[1] The ALJ used a different citation for this medical record, but the court believes this is the correct citation.

4

and that it is likely the back condition would mildly to moderately impact physical and sedentary labor by causing pain, lack of coordination, and fatigue. (R. 1447). The doctor also evaluated Plaintiff's bilateral knee strain and left knee degenerative arthritis (R. 1461), and determined that Plaintiff's left knee condition may mildly to moderately impact physical and sedentary labor during flare ups due to pain, as well as cause lack of coordination and fatigue. (R. 1471).

Plaintiff saw her treating physician, Dr. Travis, from May 2016 through April 2018, a total of 29 times. (R. 889-966, 1894-1913, 2050-53). During these appointments, Plaintiff was treated primarily for back and neck pain. (*Id.*). And, at each visit, Dr. Travis reported that Plaintiff had no headaches.[2] (*Id.*). Dr. Travis completed a medical source statement and a clinical assessment of pain on January 3, 2019. (R. 2134-35). In her medical source statement, Dr. Travis opined that during an 8-hour workday Plaintiff could: sit for four hours and stand or walk for less than one hour; rarely perform pushing or pulling movements; rarely operate motor vehicles; rarely perform standing or stooping movements; frequently perform gross manipulation; and occasionally perform fine manipulation regarding her finger dexterity. (R. 2134). She further found that Plaintiff's pain was distracting to adequate performance of daily activities and there were significant side effects that may limit effectiveness of work duties. (R. 2135). Dr. Travis stated that the pain would prevent Plaintiff from being able to maintain attention, concentration, or pace for periods of two hours and that she was likely to be off task for 25% or more of the workday. (*Id.*). Further, Dr. Travis reported that Plaintiff had a left rotator cuff tear. (R. 2134-35).

Plaintiff also has a history of anxiety and depression. On March 17, 2017, she visited psychologist Tony Cross for a mental health exam. (R. 1571-73).[3] Dr. Cross reported that Plaintiff

---

[2] Dr. Travis also expressed concern that Plaintiff was dependent on opioids and steroids. (R. 2134).

[3] Plaintiff's Brief incorrectly indicates the date was March 27, 2017.

5

had mild depressive symptoms and scored a 13/21 on a general anxiety screening, which is consistent with mild symptoms of anxiety. (R. 1571-73). Treatment options were discussed with Plaintiff, but she declined further intervention. (R. 1573).

On May 8, 2017, Plaintiff was seen by psychologist Chebon Porter for a Comprehensive Psychological Examination. (R. 291-93). Dr. Porter noted that Plaintiff's thoughts were lucid and goal-directed, but her processing speed appeared slow. (R. 292). Her demeanor was observed as being friendly, polite, and cooperative, and she was found to be oriented to all spheres. (R. 292). Plaintiff told Dr. Porter that she slept very poorly at night and felt sedated/slowed due to the medications required to manage her physical pain. (*Id.*). Plaintiff endorsed her daily memory and cognitive function as "okay," but noted that the migraine medicine affected how sharp she felt. (*Id.*). Plaintiff denied having any other memory or cognitive problems. (*Id.*). Based on these observations and conversations with Plaintiff, Dr. Porter found that Plaintiff was in severe psychiatric distress that significantly interfered with all functional domains, including work. (R. 293). She diagnosed Plaintiff with moderate, recurrent, Major Depressive Disorder, PTSD, Panic Disorder with Agoraphobia, and Generalized Anxiety Disorder. (*Id.*). Despite this diagnosis, Dr. Porter noted that Plaintiff was capable of managing her own affairs. (*Id.*).

In June 2017, Plaintiff met with a mental health nurse who noted that Plaintiff reported some symptoms of depression that were not consistent with a major depressive episode. (R. 1535). Plaintiff self-rated her anxiety and depression symptoms as 5/10 and reported having difficulty sleeping and eating (due to a lack of appetite). (R. 1537). In July 2017, Plaintiff reported that she was still experiencing depressive symptoms, but medical records indicate that these were not consistent with a major depressive episode. (R. 1526). Plaintiff again rated her depression and anxiety symptoms as being a 5/10. (R. 1528). In September 2017, Plaintiff reported symptoms of

6

depression increased into the moderate range on the PHQ-9 scale and complained that she was currently experiencing a migraine headache. (R. 1513). She self-rated her anxiety level as a 0/10. (*Id.*). In November 2017, Plaintiff's PHQ-9 scale results decreased from the moderate symptomatic range to the mild symptomatic range. (R. 1482). In December 2017, Plaintiff complained of migraine headaches and lack of appetite. Her depression symptoms were in the mild range and she told her physician that she had been accepted to the nursing school at Herzing College, but she was looking to re-apply elsewhere. (R. 1417).

During Plaintiff's 2017 C&P exam, she was examined by psychiatrist Dr. Jonathan Skonicki. (R. 1426-33). The examination indicated that Plaintiff had Generalized Anxiety Disorder, Panic Disorder with Agoraphobia, and Depressive Disorder. (R. 1432). Dr. Skonicki found that Plaintiff suffered occupational and social impairments, but was still capable of managing her financial affairs. (R. 1429). He stated that Plaintiff indicated crippling symptoms of depression/anxiety that would present a barrier to her securing and maintaining employment. (R. 1433).

On July 18, 2018, Plaintiff met with psychologist Susan Corbin at the request of the Alabama Disability Determination Services. (R. 1813-17). Dr. Corbin noted that Plaintiff appeared tired during the interview, but that she maintained good eye contact and her clarity of speaking was normal. (R. 1815). Dr. Corbin noted that Plaintiff showed a good capacity for abstract thinking and understanding. (*Id.*). Dr. Corbin stated that Plaintiff fell into the average range of intellectual functioning, but that she has moderate impairment of her short-term memory and her processing speed was slow. (*Id.*). Plaintiff appeared depressed and anxious, and while she was moderately impaired in her ability to handle change and in her social relating, Plaintiff was able to follow instructions, both written and spoken. (R. 1817). Dr. Corbin diagnosed Plaintiff with Adjustment

Disorder with Depressed Mood, Generalized Anxiety Disorder, and Panic Disorder without Agoraphobia. (*Id.*). Dr. Corbin determined that these may mitigate Plaintiff's ability to be reliable and get along with others on the job. (*Id.*). She suggested that Plaintiff's physical problems may be more influential than her mental ones as related to her prognosis for future employment. (*Id.*).

In November 2018, Plaintiff met with a psychiatrist and was reported to be doing much better. (R. 2109). She reported that she was seeing a rheumatologist and felt a reduction in her depressive symptoms because she finally had a diagnosis for her physical pain. (*Id.*). Plaintiff stated that she still had some depressive symptoms but had gone two weeks without any crying spells. (*Id.*). The medical records note that Plaintiff appeared alert-and-oriented times four, she had an appropriate fund of knowledge, and her recent and remote memory was grossly intact. (R. 2112).

Plaintiff asserted that she has difficulty using her hands. (R. 1816). During her examination with Dr. Corbin, Plaintiff reported that numbness in her hands interfered with her ability to prepare meals and do housework. (*Id.*). However, in February 2018, Plaintiff met with a nurse practitioner who noted that while Plaintiff complained of pain, numbness, and tingling in her arms, she had no decreased sensation in her fingers and her strength was 5/5 in all extremities. (R. 1404).

In November 2018, Plaintiff visited the Veterans Administration rheumatology clinic. (R. 2129). There, a physician found that the clinical and serological picture was consistent with lupus. (R. 2130). They also stated that Plaintiff's motor strength was 5/5 in all four extremities and while her DIPs, PIPs, MCPs, and wrists were tender, there was no swelling to palpation. (R. 2129). At a follow-up appointment a few weeks later, Plaintiff expressed she had experienced improvement in her joint pain with the medication "methotrexate." (R. 2103). However, she complained of side

effects from hydroxychloroquine, so her medications were adjusted. (R. 2104). The physician's physical exam found mild swelling over Plaintiff's MCPs and wrists. (*Id.*).

Plaintiff also alleges disability due to asthma, rhinitis, and sinusitis. (R. 1433, 1471-73). Plaintiff's November 2017 C&P examination found that her respiratory condition did not impact her ability to work. (R. 1473). The C&P examination also indicated that, after reviewing endoscopy and CT results, the physician did not believe Plaintiff's sinusitis and rhinitis would impact her ability to work. (R. 1438).[4]

**III.   ALJ Decision**

Disability claims should be evaluated using a five step sequential analysis. *See* 20 C.F.R. 404.1520. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R § 404.1520(b). Substantial gainful activity can be defined as work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot be considered disabled regardless of how severe their impairments are. 20 C.F.R. § 1520(a)(5)(b). At step two, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1420(c). An impairment is considered to be non-severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If the claimant meets the criteria, then they are disabled.

---

[4] The C&P exam also showed that Plaintiff had no functional loss related to a foot condition and that condition did not affect her ability to perform any type of occupational task. (R. 1455-60).

If the claimant does not meet the disability requirements under the third step, then the ALJ must look to steps four and five to determine if disability can be found. Step four requires the ALJ to determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The ALJ must look at whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can do past relevant work, then they are not considered to be disabled. 20 C.F.R. § 404.1560. If the claimant does not have the residential functional capacity to perform their past relevant work, then the ALJ must advance to step five. *Id.* At step five, the ALJ must show that there is other work the claimant can do that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The work the ALJ finds in step five must take into consideration the claimant's RFC, age, education, and work experience. *Id.* If the ALJ finds that there is no other work that the claimant can do, then they are considered to be disabled. *Id.*

Here, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018. (R. 182-83). He determined that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of disability of May 15, 2017 through her date last insured of December 31, 2018. (R. 38). Based upon the medical evidence presented, the ALJ concluded that Plaintiff had the severe impairments of osteoarthritis, rheumatoid arthritis, disc disease, systemic lupus, erythematosus, asthma, obesity, hypertension, depression, posttraumatic stress disorder, attention deficit hyperactivity disorder, anxiety, and panic disorder. (R. 17). The ALJ also concluded that Plaintiff had the non-severe impairments of allergic rhinitis, hypertrophy of nasal turbinates, pneumonia, mild emphysema noted on chest CT, decreased leukocyte number, vitamin D deficiency, loss of appetite, lactose intolerance, carpal tunnel syndrome, shoulder pain, nausea, sleep dysfunction, knee pain, migraine headache, Chiari

malformation not symptomatic, cervicalgia, low back pain, ganglion, palpitations, gastroenteritis and colitis, gastroesophageal reflux disease, acute bronchitis, fever, and sprain of anterior cruciate ligament of the knee. (R. 18). The ALJ determined that there was no evidence that these conditions caused anything more than minimal functional limitations for a period of 12 months. (*Id.*) The ALJ also found that the conditions did not significantly limit Plaintiff's ability to perform basic work activities. (*Id.*)

After consideration of the medical evidence, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ also determined that:

> through the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except with occasional pushing and pulling with both of the upper and lower extremities; no climbing ladders or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent reaching, handling, fingering, and feeling bilaterally; should avoid concentrated exposure to extreme heat and cold, vibration, fumes, odors, chemicals, gases, dust, and poorly vented areas; should avoid all exposure to hazardous machinery and unprotected heights; no work requiring walking on uneven or slippery surfaces; during a regularly scheduled workday, or the equivalent thereof, she can understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions; can do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks; should have no more than occasional contact with the general public; can deal with changes in workplace, if introduced occasionally and gradually, and if well explained; and may occasionally miss one to two days of work per month due to her impairments.

(R. 21-22).

The ALJ further concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 22-23). He also found that, while Plaintiff

11

was unable to perform her past relevant work, other jobs existed in significant numbers in the national economy that she could have performed. (R. 29). The VE's testimony established that jobs existed at the necessary sedentary level. (R. 30). Thus, the ALJ ruled that Plaintiff was not under a disability, as defined by the Act, between May 15, 2017, the alleged onset date, through December 31, 2018, the date last insured. *Id.*

### IV.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision remanded for further development. (Doc. #8 at 16). Plaintiff argues that the ALJ erred by (1) disregarding Plaintiff's VA Disability Rating, and (2) rejecting the opinion of every treating or examining medical source and instead relying on his own lay interpretation of medical records. (Doc. #8 at 2).

### V.    Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## VI. Discussion

### A. The ALJ Did Not Err in Disregarding the Veterans Affairs ("VA") Disability Rating.

Plaintiff first argues that the ALJ ignored the VA Disability Rating dated February 9, 2018. (R. 152-53). This argument fails. In his decision, the ALJ states that he did not take the VA Disability Rating into consideration as it was neither valuable nor persuasive. (R. 28).

While the VA's disability rating is not binding, the evidence supporting the decision should be given great weight. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984). Here, the ALJ declined to analyze the VA disability rating decision. (R. 28). He cited to the new regulations which specify that a disability rating by the VA is considered to be neither inherently valuable nor persuasive in regard to a claimant's status under the Social Security Act.[5] (R. 28). *See* 20 C.F.R. § 404.1520b(c). Therefore, the ALJ did not err by declining to follow the VA Disability Rating so long as he properly considered the evidence supporting the VA's decision. (R. 28). 20 C.F.R. § 404.1520b(c).

Plaintiff claims that the ALJ ignored the VA Disability Rating dated February 9, 2018. Under the new regulations, an ALJ is not required to assign any weight or analysis to the VA Disability Rating, but must consider all of the evidence that supports the VA's decision. 20 C.F.R. §§ 404.1504, 404.1513(a)(1)-(4). The basis for the VA's disability determination is the C&P examination. Plaintiff acknowledges that the ALJ addressed the C&P exam the VA relied upon for their decision regarding her disability rating. (Doc. #8 at 14). In his Opinion, the ALJ considered the C&P exam related to Plaintiff's back pain, foot condition, asthma, rhinitis and sinusitis, anxiety, and depression. (R. 23-26). During the C&P examination, a psychiatrist

---

[5] On March 27, 2017, new regulations went into effect. The Social Security Administration specifically addresses this by stating that the "VA and SSA disability programs serve different purposes for populations that overlap." 82 Fed. Reg. at 5848.

determined that Plaintiff's self-reported symptoms of crippling depression and anxiety would present a barrier to securing and maintaining employment. (R. 1426-33). The ALJ found, however, that this assessment was not consistent with Plaintiff's longitudinal medical record. (R. 23). In December 2017, VA progress notes reflect that Plaintiff's depression symptoms were only mild and that she was in the process of re-applying to nursing school. (R. 1415-17).

The ALJ further determined that Plaintiff's longitudinal treating VA medical records did not indicate that she had symptoms of any mental impairment greater than that which is mild to moderate. (R. 27). He considered the supporting evidence underlying the VA's decision and provided an explanation about why he determined the evidence should not be assigned substantial weight. (*Id.*). Therefore, the ALJ's failure to directly address the VA's disability rating is not reversible error.

### B. The ALJ's Representation of Plaintiff's Daily Activities Was Not a Reversible Error.

Plaintiff contends that the ALJ misrepresented her daily activities. She claims that the ALJ incorrectly used her attempt to attend nursing school to rebut her disability claim. (Doc. #8 at 13). Plaintiff alleges that the records show that she made every effort possible to work and was simply unable to overcome her physical and mental impairments. (*Id.*). This argument fails as well.

The ALJ supported the decision by noting that in her function report Plaintiff said she was able to care for her children and maintain her personal care, prepare meals, shop, and handle finances. (R. 27). Of course, participation in daily activities does not necessarily disqualify a claimant from a disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians). However, that does not

14

mean that a claimant's daily activities can be completely ignored. Both the ALJ and the court are required to consider the record as a whole to ensure that there is substantial evidence to support an administrative conclusion. *Dyer v. Barnhart,* 395 F.3d 1206 (11th Cir. 2005).

Here, Plaintiff asserts that the ALJ misrepresented her daily activities. When assessing Plaintiff's daily activities, the ALJ looked at medical records as well as the function report. An ALJ is not required to specifically reference every piece of evidence in a decision, so long as the decision is not an overly broad enough rejection that the court can conclude the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Charter*, 67 F.3d 1533, 1561).[6]

The ALJ's analysis of Plaintiff's daily activities is based on the objective observations of Plaintiff's doctors as well as her own admissions. There is substantial evidence to support the ALJ's decision. Therefore, the ALJ's representation of Plaintiff's daily activities was not error.

### C.    The ALJ Did Not Err by Finding Dr. Travis' Opinion to be Unpersuasive.

Plaintiff claims that the ALJ did not adequately consider the opinion of every treating or examining medical source. (Doc. #8 at 12). Specifically, she alleges that the ALJ ignored the opinion of her treating physician, Dr. Travis. (Doc. #8 at 15). Plaintiff's argument fails because the ALJ may discount a treating physician's opinion for "good cause." (R. 27-28, 2134-35). A treating physician is a medical source that has provided the claimant with medical treatment or evaluation and who has, or had, an ongoing treatment relationship with them. C.F.R. § 404.1527. Testimony of a treating physician must be given substantial or considerable weight unless there is "good cause" not to do so. *Lewis*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *MacGregor v.*

---

[6] Plaintiff claims the ALJ misrepresented her daily activities. The court's task is to determine whether there is substantial evidence in the record to support the ALJ's decision. The court cannot decide facts anew, reweigh the evidence, or substitute its judgement for that of the Commissioner. *Dyer* 395 F.3d at 1210. Here, substantial evidence supports the ALJ's interpretation of Plaintiff's daily activities.

*Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).[7] So, an ALJ is required to clearly articulate their reasons for giving less weight to the opinion of a treating physician and failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. There is good cause to reject a medical opinion or prior administrative finding when the doctor's opinions are conclusory or inconsistent with their own medical records. *Lewis*, 125 F.3d at 1440 (*see also Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)). A statement by a medical source that a claimant is disabled or unable to work does not mean that the court will determine that the claimant is disabled. 20 C.F.R. § 1527(d)(1). A treating physician's conclusory statement that a claimant is totally disabled should be explained by their medical findings. *Bell v. Bowen*, 796 F.2d 1350, 1354.

Here, Plaintiff alleges that the ALJ ignored the opinion of Dr. Travis. (Doc. #8 at 15). The ALJ found that the opinion of Dr. Travis, documented in her medical source statement, was not consistent with her treatment records. (R. 27-28, 2134-35). Dr. Travis saw Plaintiff 29 times over a two-year span. (R. 889-966, 1894-1913, 2050-53). During that period, the only musculoskeletal abnormality she noted was decreased range of motion of the left knee. (*Id.*). And, the only time Dr. Travis mentioned any other neurological abnormalities was during the medical source statement. (R. 2134-35). Additionally, during each visit, Dr. Travis reported that Plaintiff had no headaches. (*Id.*). Finally, though Dr. Travis reported that Plaintiff had a left rotator cuff tear in

---

[7] A new federal regulation became effective for claims filed on or after March 27, 2017. It provides that an ALJ is not required to give specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520(c). Instead, the ALJ should focus on the persuasiveness of the record by looking at supportability, consistency, relationship with the claimant (including treating or examining), specialization, and other factors. 20 C.F.R. § 404.1520c(a)-(c). The two most important factors are supportability and consistency. (*Id.*). The ALJ is not required to consider the other factors unless they find that two or more medical opinions or prior administrative medical findings that are not identical but are about the same issue are both equally well-supported and consistent. 20 C.F.R. § 404.1520c(b)(3). When articulating how they considered a medical source, the ALJ need not describe each medical opinion or prior administrative medical finding individually. 20 C.F.R. § 404.1520(b)(1).

2019, this was after Plaintiff's DIB date. Plaintiff's most recent MRI during the relevant time period occurred in November 2018 and showed no tears or perforations. (R. 2088). The ALJ found that Dr. Travis' medical source statement was at odds with her recorded assessments of Plaintiff during the course of their treating relationship. (R. 880-966, 1894-1913, 2050-53, 2134-35). The ALJ also found that Dr. Travis's own longitudinal medical records are not consistent with her opinion. (R. 28). Substantial evidence supports this conclusion, and therefore the ALJ did not err in finding Dr. Travis' opinion to be unpersuasive.

### D.      Plaintiff's Claim that the ALJ Ignored the Opinions of Dr. Porter, Dr. Corbin, and Dr. Skonicki.

Plaintiff contends that the ALJ also discounted the opinions of three examining physicians – Dr. Porter, Dr. Corbin, and Dr. Skonicki. (Doc. #8 at 12, 14-15). Plaintiff argues that the findings of Drs. Porter, Corbin, and Skonicki were consistent with each other and therefore should have carried greater weight. (Doc. #8 at 15). However, there is substantial evidence to support the ALJ's decision to fully or partially discount the opinions of these doctors.

When assessing the medical opinion of an examining physician, the ALJ must consider: (1) the length, nature, and extent of the treating physician's relationship with the claimant; (2) the medical evidence and explanation supporting the physician's opinion; (3) how consistent the physician's opinion is with the record as a whole; and (4) the physician's specialty. 20 C.F.R. § 404.1527(c), 416.927(c). While the ALJ is required to state the weight he gives to different medical opinions and his supporting reasons, he is not required to defer to the opinions of physicians who are one-time examiners. *McSwain v. Bowen*, 814 F.2d 617, 619 (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). An acceptable medical opinion must be more than just a conclusory statement that the claimant is disabled and should be supported by clinical or laboratory findings. *Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)

(citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). Therefore, if the ALJ finds that a medical opinion is not adequately supported by the medical history, it is reasonable for him to discount it.

Here, Plaintiff claims that the ALJ incorrectly concluded that Dr. Porter's and Dr. Corbin's opinions were inconsistent with and/or not supported by the longitudinal treatment records. (R. 28). The only support Plaintiff provides for this claim is that the longitudinal records were also the basis for Dr. Skonicki's conclusion that Plaintiff was disabled. (Doc. #8 at 15). But, Plaintiff has not provided any analysis as to how the ALJ erred in the interpretation of the longitudinal record regarding the opinions of Dr. Porter and Dr. Corbin. The ALJ stated that in May 2017, Dr. Porter claimed Plaintiff was in "severe psychiatric distress" such that there was significant interference in all functional domains. (R. 28). However, other medical records from May 2017 describe Plaintiff as being pleasant and having a cooperative demeanor. (R. 927). Additionally, in June 2017 the objective mental status findings for Plaintiff show that she had only mild to moderate symptoms of depression. (R. 1535, 1537). In that same month, a mental health nurse determined that Plaintiff's symptoms were not consistent with a major depressive episode. (*Id.*). Plaintiff self-rated her anxiety and depression as a 5/10, which certainly is not indicative of her symptoms being severe. (*Id.*). Therefore, the ALJ did not err by determining that Dr. Porter's medical opinion was not consistent with Plaintiff's longitudinal medical record.

Dr. Corbin assessed Plaintiff on July 18, 2018, at the request of the Alabama Disability Determination Services. (R. 1813-17). Dr. Corbin reported in July 2018 that Plaintiff's psychiatric state was depressed and anxious and that, while she had some problems with her short-term memory and concentration abilities, she fell into the "average" range of intellectual functioning. (R. 1815). The ALJ gave proper weight to Dr. Corbin's objective findings and found them to be

persuasive. Dr. Corbin stated that Plaintiff's problems would mitigate her ability to be reliable and to get along with others on a job. (R. 1817). However, Dr. Corbin's own medical records from the same visit state that while Plaintiff appeared tired, she was cooperative throughout the interview and her thought processes included seemingly clear and logical thinking. (R. 1815-16). The ALJ found Dr. Corbin's opinion to be partially non-persuasive because her opinion regarding Plaintiff's mental limitations are not consistent with the longitudinal treating medical records. (R. 28). The ALJ's decision to discount Dr. Corbin's medical opinion in part is supported by substantial evidence.

Plaintiff also alleges that the ALJ ignored the opinion of Dr. Skonicki, the psychiatrist who helped determine Plaintiff's VA disability rating. (Doc. #8 at 14). Dr. Skonicki performed a C&P exam on Plaintiff and determined that Plaintiff's self-reported symptoms of depression and anxiety were crippling and would present a barrier to her securing and maintaining employment. (R.1426-33). The ALJ found that, based on Plaintiff's longitudinal medical record, Dr. Skonicki's opinion was not persuasive, as other examinations showed Plaintiff's anxiety and depression symptoms to be mild to moderate. (R. 1415-17, 82; 1513, 26, 28, 35, 37). This finding is also supported by substantial evidence.

The totality of the inconsistencies and unsupported diagnoses led the ALJ to partially or fully discount the opinions of Dr. Porter, Dr. Corbin, and Dr. Skonicki. Since the ALJ's decision to discount their opinions is supported by substantial evidence, the ALJ's decision is due to be affirmed.

**VII.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.

The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 21, 2020.

                                        **R. DAVID PROCTOR**
                                        UNITED STATES DISTRICT JUDGE